IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:06-CR-54 |
| | ) | |
| JAMES ALLEN JONES | ) | |

## **MEMORANDUM AND ORDER**

This criminal case is before the court on the defendant's objections to the report and recommendation filed by Magistrate Judge C. Clifford Shirley on August 11, 2006 [doc. 26]. The government has not responded within the time allowed, and the objections are ripe for the court's consideration. For the reasons discussed below, the objections will be denied.

Under 28 U.S.C. § 636(b), a *de novo* review by the district court of a magistrate judge's report and recommendation is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b); *see also United States v. Campbell*, 261 F.3d 628, 631-32 (6th Cir. 2001).

***Factual Background***

The following facts are taken from the testimony at the suppression hearing as well as a video tape recording made at the time of the stop of the defendant's vehicle. On April 26, 2006, at about 11:00 p.m., park rangers were patrolling an area near NewFound Gap in the Great Smoky Mountains National Park, a special maritime and territorial jurisdiction of the United States, when they noticed a vehicle parked in an area designated for day parking only. Ranger Jacqueline Lott and her partner, Ken Meyer, decided to stop and check the vehicle. They shined their lights in the windows, which were fogged, and noticed two occupants, the driver, defendant James Jones, and a female passenger, both sound asleep. The hood of the vehicle was cool indicating to Ranger Lott that the vehicle had been parked for awhile.

At about 11:09 p.m., Ranger Lott knocked on the driver's side window, and asked the driver to roll down the window. Instead, defendant Jones opened the door and got out of the SUV. Ranger Lott asked him the following questions:

    Lott:        How are you guys doing?
    Jones:      Okay
    Lott:        It kind of looks like you're camping.
    Jones:      Well, we're just taking a break.
    Lott:        Do you have any ID on you, sir?
    Jones:      Yes, mam.

| | |
|---|---|
| Lott: | Any weapons or anything in the car I need to know about? |
| Jones: | (Indicates "no"). |

The defendant gave Ranger Lott a 1994 expired temporary driver's license. About a minute later, after some discussion about where the defendant was from and where he was going, Ranger Meyer asked if the defendant had any alcohol and made a second inquiry about guns. The defendant then admitted that he had a rifle in the vehicle, which he offered to get for the rangers. Ranger Lott told him not to reach for it – to just point it out so Ranger Meyer could retrieve it. The gun turned out to be an unloaded single-shot shotgun.

Ranger Lott called her dispatcher and asked for a check on the defendant's driver's license and said that she was looking for a serial number on the gun. She testified that it was her practice to confirm that a gun was not stolen. She was never able to find the serial number on the shotgun, however, and the rangers returned it to the defendant.

While waiting for the dispatcher to call back about the defendant's driver's license, Ranger Lott asked the defendant if he would like to sit in the back of the rangers' vehicle since it had begun to rain harder. Ranger Lott testified that she would not have let him return to his own vehicle because she did not know if there were other weapons there. He was patted down for officer safety and allowed to sit in the rangers' vehicle to stay warm.

At 11:20 p.m., the dispatcher notified the rangers that there were two outstanding non-extraditable warrants for the defendant. The defendant heard the dispatch and told the rangers that he could explain the warrants. About this time, the rangers learned from dispatch that the defendant did not have a valid driver's license. The rangers decided to check to see if the defendant had a prior felony conviction, and the following exchange occurred:

| | |
|---|---|
| Meyer: | (Indicates to Lott that she needs to ask dispatch about prior felonies) |
| Lott: | I'll ask her. |
| Jones: | I can answer that for you. |
| Meyer: | Oh yeah. What have you got? |
| Jones: | I am a felon. I can't have that kind of gun? |
| Meyer: | It's illegal. |
| Jones: | I didn't know that. I've never shot it. |

Thereafter, it was discovered that the passenger's driver's license was suspended. The rangers decided to search the defendant's vehicle, and prior to the search, the passenger was also patted down and placed in the back seat of the rangers' vehicle. Upon further questioning by the rangers, the defendant told the rangers about a second gun, identified as a "movie gun" loaded with blanks, located under the driver's seat.[1]

---

[1] Defense counsel stated at the suppression hearing that ATF had told him they were not pursuing charges on the movie gun, but it is charged in the indictment.

In his motion to suppress evidence, the defendant argued that the firearms and his statements made during the stop should be suppressed. He argues that the evidence was obtained as a result of an illegal search and seizure and that he was not given his *Miranda* warnings before he was questioned.

The magistrate judge found that the rangers had probable cause to stop and arrest the defendant for illegal camping in the Park; that their questions and the detention of the defendant and his passenger were justified based on this probable cause; that the defendant was not "in custody" at the time he made his statements about the outstanding warrants and his felony status; but that he was in custody when he admitted to having the movie gun so he should have been advised of his *Miranda* rights. The defendant specifically objects to the magistrate judge's findings that the initial questions were justified. He argues that all the evidence (guns and statements) flowed from these illegal questions, so the evidence must be suppressed.

A. Inevitable Discovery of Firearms

For the reasons discussed below, this court finds that the initial encounter with the defendant was proper under the Fourth Amendment. Therefore, as the government argues, once the defendant and his passenger were unable to produce valid driver's licenses, the firearms would have been inevitably discovered. *See Nix v. Williams*, 467 U.S. 431, 448 (1984) (when evidence would inevitably have been discovered without reference to any police

5

error or conduct, "there is no nexus sufficient to provide a taint and the evidence is admissible").

Concerning the lawfulness of the stop, the court finds that the rangers' decision to stop and investigate the defendant's parked vehicle was warranted for at least two reasons. The defendant calls the stop a "safety and welfare" check, and Ranger Lott's testimony supports this reason. The defendant's vehicle was parked late at night in a day parking area. The vehicle had been there some time and both occupants were sound asleep. Ranger Lott had a responsibility to check on the vehicle and its occupants to make sure everything was alright. Ranger Lott testified that sometimes people stop along the roadway because they are sick, and in fact in this case, the defendant said that some recent heart problems were a reason why they stopped in the parking area. After asking whether the defendant and passenger were alright, her next question was for some identification. The defendant gave Ranger Lott a 1994 expired temporary driver's license. The court finds that the rangers would have been remiss in allowing the defendant to leave without verifying that the defendant and/or his passenger had valid driver's licenses.

In any event, the encounter with the defendant's vehicle may be justified as a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (an officer may stop and investigate when she has a reasonable suspicion, based on specific and articulable facts, that the suspect is involved in criminal activity). It is against

6

Park regulations to camp in the Park except in designated areas.[2] Ranger Lott testified that the parking area where they found the defendant's vehicle was not a designated parking area. When Ranger Lott saw the occupants asleep, she had a reasonable suspicion that there was a violation of Park regulations; that is, the occupants were camping in an prohibited area. Her request for identification was reasonably related to the reason for the stop. See Terry, 392 U.S. at 19.

Since neither the defendant nor his passenger had valid driver's licenses, they would not have been allowed to drive away. Their vehicle would have been, and actually was, impounded, and both firearms would have been found during a valid inventory search. Thus, there is no justifiable reason to exclude the firearms as they would have been inevitably discovered.

Furthermore, the defendant's status as a felon would have been discovered whether he volunteered the information or not. A check of his prior criminal record would have revealed this fact.

B. Propriety of Detention and Questioning

Notwithstanding that the evidence necessary to support the charge against the defendant for being a felon in possession of firearms would have been discovered inevitably, the defendant objects to the rangers' questions concerning whether he had any guns in his vehicle.

---

[2] "Camping outside of designated sites or areas" is prohibited. 36 C.F.R. § 2.10(b)(10). "Camping" is defined, in relevant part, as: "parking of a motor vehicle . . . for the apparent purpose of overnight occupancy." 36 C.F.R. § 1.4(a).

The court finds that the rangers' initial questions about guns were reasonable and did not violate any of the defendant's Fourth or Fifth Amendment rights. If a citizen is stopped and detained for a legitimate reason, then "[q]uestions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention." *United States v. Burton*, 334 F.3d 514, 518 (6th Cir. 2003) (citing *United States v. Childs*, 277 F.3d 947, 954 (7th Cir. 2002) (en banc)). In this case, Ranger Lott's initial question about guns in the vehicle occurred within a few seconds of knocking on the window of the defendant's vehicle. Ranger Meyer's questions ("And no guns"? and "Are you sure"?) occurred just over a minute into the encounter. The defendant was not in custody at this point; he was standing outside his vehicle and was free to move around.[3] The court finds that these questions were not overly intrusive, held the potential for detecting crime, and did not delay the detention. Since the rangers had not yet verified the status of the defendant's driver's license, he would not have been allowed to leave in any event.

The defendant argues that the questions are analogous to a protective pat-down search for officer safety. This court disagrees. A question or two about possessing firearms is entirely different than a "serious intrusion upon

---

[3] That the defendant was not is custody is corroborated by later events; his shotgun was returned to him while he was standing outside his vehicle.

the sanctity of the person" (*see Terry*, 392 U.S. at 17) during a pat-down search. If the defendant had continued to deny the presence of a gun, *and* the defendant or his passenger had valid driver's licenses, *and* there was no reasonable suspicion to detain him beyond the reason for the stop in the first place, then the rangers would have had to let him go and the guns would not have been found. *See, e.g., United States v. Herbin*, 343 F.3d 807, 811 (6th Cir. 2003).

The defendant also argues that his statements about the shotgun and his status as a felon should be suppressed because he was not given his *Miranda* warnings. As discussed above, however, at the time the defendant admitted that there was shotgun in his vehicle, he was not in custody and the rangers were not obligated to advise him of his rights.

Concerning his statement about being a felon, the court finds that the defendant volunteered this information, and it need not be suppressed. In *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980), the Supreme Court held that *Miranda* warnings are necessary only when a person in custody is "subjected to either express questioning or its functional equivalent. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . . Volunteered statements of any kind are not barred by the Fifth Amendment . . . ." *Id.* at 299-300 (quoting *Miranda v. Arizona*, 384 U.S. 436, 478 (1966)). The question then becomes whether a defendant's statements were "volunteered." In the absence of an express question, a defendant's statement is

voluntary unless the rangers "should have known" that their conversation was reasonably likely to elicit an incriminating response from the defendant. *Id.* at 302.

As described above, the defendant had been placed in the backseat of the ranger's vehicle to wait on the status of his license, primarily because it was raining. Ranger Lott testified that they would not have allowed the defendant to get back into his own vehicle because they did not know whether there were other firearms in the vehicle, but presumably he could have waited outside in the rain. Nevertheless, while in the back of the ranger's cruiser, the defendant overheard the rangers discussing their intention to ask dispatch if the defendant had any prior felonies. He volunteered, "I can answer that for you." Ranger Meyer then asked him, "Oh yeah. What have you got?" and the defendant responded, "I am a felon."

The court finds that the rangers' brief conversation about checking the defendant's record for prior felonies was not the "functional equivalent" of questioning. The rangers had no reason to believe that a mention of their intent to contact their dispatcher as part of their investigation would cause the defendant to admit his felon status.

If there was any doubt as to the defendant's custodial status up to this point, his admission gave the rangers probable cause to arrest him, and he was in custody. Any of the defendant's incriminating responses to the rangers'

10

subsequent questions about other firearms in the vehicle should be suppressed since the defendant was not given his *Miranda* warnings.  The movie gun itself would have to be suppressed absent inevitable discovery.

### *Conclusion*

The court has reviewed *de novo* the pleadings, the report and recommendation, the transcript of the suppression hearing, and the tape recording of the incident and, to the extent that the magistrate judge's report and recommendation is consistent with this memorandum, it is **ADOPTED**.  For the reasons discussed above, it is hereby **ORDERED** that the defendant's objections to the report and recommendation are **OVERRULED IN PART**, and the defendant's motion to suppress evidence [doc. 13] is **DENIED IN PART AND GRANTED IN PART**.

ENTER:

　　　　*s/ Leon Jordan*　　
United States District Judge